## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| W.S., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 19-cv-1390 (KBJ) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

W.S. is an elementary school student who is eligible for special education services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* (*See* Redacted Compl. ("Compl."), ECF No. 17, ¶¶ 6, 11, 35.)[1] On May 14, 2019, W.S. and his parents, W.S. and E.S. (collectively, "Plaintiffs"), filed the instant action against the District of Columbia, challenging the decision of a Hearing Officer at the Office of the State Superintendent of Education ("OSSE"), who denied Plaintiffs' request for funding and placement at a specific private school on the ground that the District of Columbia Public Schools system ("DCPS") and OSSE had provided W.S. an appropriate educational placement under the IDEA. (*See id.* ¶¶ 52, 82–110; *see also* Sealed Compl., ECF No. 1.) In their three-count complaint, which seeks tuition reimbursement for the year W.S. attended Plaintiffs' preferred school, Plaintiffs allege that (1) DCPS and OSSE denied W.S. a "free appropriate public education" for the school year at issue, in violation of the IDEA (*see* Compl. ¶ 113), (2) the Hearing

---

[1] Page number citations refer to the numbers automatically assigned by the Court's electronic case filing system.

Officer failed to "order [DCPS and OSSE] to place and fund W.S. in an appropriate program and placement" (*see id.* ¶ 115), and (3) the Hearing Officer "violated [P]laintiffs' due process rights . . . by failing to render a proper decision based on an accurate and impartial understanding of the facts" (*see id.* ¶ 117), and "by failing to apply correct legal standards" (*id.* ¶ 118).

On May 16, 2019, this Court referred this matter for random assignment to a Magistrate Judge for full case management. (*See* Min. Order of May 16, 2019.) The case was assigned to Magistrate Judge Deborah Robinson, and the parties subsequently filed cross-motions for summary judgment. (*See* Pls.' Mot. for Summ. J. ("Pls.' Mot."), ECF No. 10; Def.'s Cross-Mot. for Summ. J. ("Def.'s Cross-Mot."), ECF No. 11.)

Before this Court at present is Magistrate Judge Robinson's Report and Recommendation regarding the parties' cross-motions for summary judgment, as well as the District of Columbia's objections thereto. (*See* R. & R., ECF No. 20; Def.'s Objs. to R. & R. ("Def.'s Objs."), ECF No. 21; *see also* Pls.' Reply to Def.'s Objs., ECF No. 23.)[2] The Court has carefully reviewed the Report and Recommendation, the parties' submissions, and the record evidence, and for the reasons discussed below, the Court will **ADOPT** Magistrate Judge Robinson's Report and Recommendation in full. Accordingly, Plaintiffs' motion for summary judgment will be **GRANTED IN PART**, and only insofar as Plaintiffs request further administrative proceedings to determine whether the school at which DCPS and OSSE placed W.S. could manage students with aggressive behaviors. Defendant's cross-motion for summary judgment will be

---

[2] The Report and Recommendation, which is 27 pages long, is attached hereto as Appendix A.

**DENIED WITHOUT PREJUDICE**, and with the understanding that Defendant may file a renewed summary judgment motion after the Hearing Officer has determined (1) whether W.S.'s aggressive behaviors could have been accommodated in the educational setting that DCPS and OSSE assigned, and if not, (2) whether Plaintiffs are entitled to tuition reimbursement for the year W.S. attended Plaintiffs' preferred school.  A separate Order consistent with this Memorandum Opinion will follow.

## I.    BACKGROUND

W.S. began receiving special education services in pre-kindergarten, after exhibiting behavioral issues and developmental delays.  (*See* Def.'s Resp. to Pls.' Statement of Undisputed Material Facts, ECF No. 11-1, ¶¶ 3–5.)  Although W.S. made substantial progress during the beginning of the following school year, he started to express himself in increasingly violent and aggressive ways, and his academic performance soon took a turn for the worse.  (*See id.* ¶¶ 7–13.)  In response, W.S.'s parents retained a pediatric specialist to evaluate W.S. and to help craft a new Individualized Education Plan ("IEP") for him.  (*See id.* ¶¶ 14–15, 17.)  After conducting a neurodevelopmental exam, the specialist diagnosed W.S. with Autism Spectrum Disorder, Attention Deficit Hyperactivity Disorder, and an anxiety disorder, and recommended that he be placed in a "highly structured" program that uses "evidence-based, specialized teaching and behavioral strategies to support his social, emotional-behavioral, and learning needs."  (*Id.* ¶ 17.)  Building on the specialist's evaluation and report, W.S.'s parents worked with an educational consultant and DCPS to develop a new IEP, which called for a "full-time special education placement[.]" (*See id.* ¶¶ 18–19.)  W.S.'s parents asked that W.S. be placed at The Auburn School, but

OSSE rejected their request, because The Auburn School lacked a certificate of approval.  (*See id.* ¶ 22.)  OSSE instead placed W.S. at The Children's Guild (*see id.* ¶ 32), a school that W.S.'s parents and their educational consultant deemed inadequate (*see id.* ¶¶ 24–26).  W.S.'s parents subsequently enrolled W.S. in The Auburn School, notwithstanding OSSE's decision, and filed an administrative complaint seeking to compel "OSSE and/or DCPS [to] fund [W.S.'s] placement there."  (*See id.* ¶¶ 33, 35.)

The parties then presented arguments and witnesses to a Hearing Officer at OSSE, who ultimately dismissed Plaintiffs' complaint with prejudice.  (*See* Hearing Officer Determination, Administrative R., ECF No. 7-1, at 21.)  The Hearing Officer concluded that Plaintiffs had not established a prima facie case that W.S. had been denied a free appropriate public education, and that, in any event, DCPS and OSSE had demonstrated that The Children's Guild was an appropriate placement for W.S.  (*See id.* at 19–20.)  Given those determinations, the Hearing Officer did not address whether The Auburn School was a proper placement, or whether the equities favored reimbursing Plaintiffs for W.S.'s enrollment there.

Following the Hearing Officer's decision, Plaintiffs initiated the instant action against the District of Columbia, and the parties then filed cross-motions for summary judgment.  Plaintiffs argue in their motion that the Hearing Officer incorrectly determined that they did not establish a prima facie case and erroneously found that DCPS and OSSE had offered W.S. an appropriate placement.  (*See* Pls.' Mot. at 13–21.)  Plaintiffs also contend that the Hearing Officer failed to consider W.S.'s unique needs as a twice-exceptional student, improperly weighed the testimony of the parties' witnesses, and inappropriately concluded that W.S.'s parents had acted in bad faith.

(*See id*. at 21–34.)  In addition, Plaintiffs assert that The Auburn School is a proper placement for W.S., and that he "should be placed and funded there" as a result.  (*See id.* at 34–37.)  For its part, the District of Columbia maintains that the Hearing Officer's determination was correct, and that DCPS and OSSE provided W.S. a free appropriate public education in compliance with the IDEA.  (*See* Def.'s Cross-Mot. at 16–37.)

After the parties finished briefing their cross-motions for summary judgment, Plaintiffs informed the Court that the District of Columbia had assigned W.S. a different placement for the following school year, and that they were no longer seeking to compel DCPS and OSSE to place W.S. at The Auburn School.  (*See* Pls.' Notice Regarding Relief Sought, ECF No. 16.)  Plaintiffs clarified, however, that they "continue to seek full reimbursement" for the year that W.S. attended school there. (*See id.*)

On August 17, 2020, Magistrate Judge Robinson issued a Report and Recommendation on the parties' cross-motions for summary judgment, addressing only whether the Hearing Officer properly determined that The Children's Guild was an appropriate placement under the IDEA.  (*See* R. & R. at 27; *see also id.* at 8 n.2 (explaining that the Report and Recommendation would not discuss whether The Auburn School was a proper placement given Plaintiffs' representation that they no longer sought placement there).)  After reviewing the parties' arguments on that issue and examining the administrative record, Magistrate Judge Robinson recommends that Plaintiffs' motion be granted, and that Defendant's cross-motion be denied.  (*See id*. at 27.)  Specifically, Magistrate Judge Robinson finds that the Hearing Officer "applied a more stringent standard" than appropriate when evaluating whether Plaintiffs had

established a prima facie case that W.S. had been denied a free appropriate public
education.  (*See id.* at 15–17.)  Magistrate Robinson also finds that the Hearing Officer
did not "adequately address" whether The Children's Guild could properly manage
W.S.'s aggressive behaviors.  (*See id.* at 25–27.)  According to Magistrate Judge
Robinson, the Hearing Officer failed to make any findings or conclusions about this
issue, despite the fact that W.S.'s aggressive behaviors "were a central part" of his IEP
(*see id.* at 25), and The Children's Guild could qualify as an appropriate placement
under the IDEA only if it was able to "substantially implement[]" the part of W.S.'s IEP
that required management of such behaviors (*see id.* at 15 (internal quotation marks and
citation omitted)).  Magistrate Judge Robinson further concludes that, even though
various pieces of evidence in the record could *theoretically* support a finding that The
Children's Guild was capable of managing W.S.'s aggression, such evidence is
"contradictory and unreliable" at best.  (*See id.* at 25–27.)

    With respect to Plaintiffs' remaining challenges to W.S.'s placement at The
Children's Guild, Magistrate Judge Robinson's Report and Recommendation concludes
that the Hearing Officer properly resolved the dispute in the District of Columbia's
favor, because, apart from the issue of W.S.'s aggressive behaviors, "Plaintiffs'
purported requirements" for an appropriate educational placement "were not contained
within W.S.'s IEP" (*see id.* at 18), and thus "cannot form the basis of an educational
placement challenge" under the IDEA (*see id.* at 19).  Magistrate Judge Robinson
additionally finds that the Hearing Officer's credibility determinations were reasonable
(*see id.* at 21); that the record supports the Hearing Officer's conclusions, except with
respect to The Children's Guild's ability to manage W.S.'s aggressive behaviors (*see id.*

at 23); and that, contrary to Plaintiffs' assertions otherwise, the Hearing Officer did not find that W.S.'s parents had acted in bad faith (*see id.* at 22 n.6).  Based on these findings and conclusions, Magistrate Judge Robinson recommends that the case be remanded to OSSE for further proceedings to determine whether The Children's Guild could have accommodated W.S.'s aggressive conduct.  (*See id.* at 27.)

In addition to articulating these findings and conclusions, Magistrate Judge Robinson's Report and Recommendation advises the parties that they may file written objections to the Report and Recommendation, which must include "the portions of the findings and recommendations to which objection is made and the basis of each such objection."  (*See id.*)  The Report and Recommendation also advises the parties that "[i]n the absence of timely objections, further review of issues addressed [in the Report and Recommendation] may be deemed waived."  (*Id.*)

The District of Columbia timely filed its objections to the Report and Recommendation on August 31, 2020, challenging only Magistrate Judge Robinson's conclusion that the Hearing Officer failed to address adequately The Children's Guild's ability to accommodate W.S.'s aggressive behaviors.  (*See* Def.'s Objs. at 1.) According to the District of Columbia, the Hearing Officer *did* make findings on this issue: in its decision, the Hearing Officer expressly noted that The Children's Guild offers "formalized plans to improve behaviors" and "provides a culture that reinforces positive behavior and downplays negative [conduct.]"  (*Id.* at 2 (internal quotation marks and citation omitted).)  The District of Columbia also maintains that the record fully supports its cross-motion for summary judgment, as the evidence demonstrates that The Children's Guild could have managed W.S.'s aggressive behaviors through

"'individually targeted'" behavior plans.  (*See id.* at 3–5 (quoting R. & R. at 24–25).)

As a result, the District of Columbia asks this Court to reject the portion of the Report

and Recommendation concerning The Children's Guild's capacity to handle W.S.'s

aggression, and to grant summary judgment in the District's favor.  (*See id.* at 6.)

## II.   DISCUSSION

This Court concludes that this matter must be remanded to OSSE for further

administrative proceedings, because the Hearing Officer did not sufficiently address

whether The Children's Guild could manage W.S.'s aggressive behaviors.  Moreover, as

such, the Hearing Officer had no occasion to determine whether Plaintiffs were entitled

to tuition reimbursement for the year W.S. attended The Auburn School.

To qualify for tuition reimbursement under the IDEA, a plaintiff must demonstrate that

(1) the "school district failed to provide a [free appropriate public education,]" (2) the

plaintiff's "private placement was suitable," and (3) the equities warrant "reimbursement for

some or all of the cost of the child's private education[.]"  *See Forest Grove Sch. Dist. v. T.A.*,

557 U.S. 230, 247 (2009).  The first prong of this test—which is the only prong that the

Hearing Officer and Magistrate Judge Robinson addressed—focuses on whether the school

district's educational placement could have implemented "substantial or significant

provisions" of the student's IEP.  *See, e.g.*, *Johnson v. District of Columbia*, 962 F. Supp. 2d

263, 268 (D.D.C. 2013) (internal quotation marks and citation omitted).  That question, in

turn, depends on the goals or requirements that the student's IEP sets forth, and the ability of

the educational placement to fulfill such goals or requirements.  *See O.O. ex rel. Pabo v.*

*District of Columbia*, 573 F. Supp. 2d 41, 53 (D.D.C. 2008).

In the instant case, there is no question that W.S.'s aggressive behaviors were an

integral component of his IEP, as Magistrate Judge Robinson concluded; indeed, these behaviors were the driving force behind his change in schools, and W.S.'s IEP repeatedly referenced the need to address his violent and aggressive outbursts.   (*See, e.g.*, Administrative R., ECF No. 8-4, at 17, 23–29.)   Notwithstanding this crucial feature of W.S.'s IEP, however, it appears that the Hearing Officer did not make any explicit findings as to whether The Children's Guild could manage W.S.'s aggression.   (*See* Hearing Officer Determination at 7–20.)   Instead, the Hearing Officer focused on the school's general ability to develop and implement individualized behavior programs (*see id.* at 12, 17–18), and highlighted statements in a brochure about The Children's Guild's outpatient clinic, which helps "children and their families" with "anger, aggressiveness and other behavioral problems" (*see* Hearing Officer Determination at 12 ¶ 11; Administrative R., ECF No. 7-6, at 42).

Because the outpatient clinic at The Children's Guild is a separate program from the school (*see* Administrative R., ECF No. 7-6, at 42), and because the Hearing Officer's findings say nothing about the *school*'s ability to accommodate the *specific* behavioral problems mentioned in W.S.'s IEP, the Court agrees with Magistrate Judge Robinson's conclusion that the Hearing Officer did not make a determination that was sufficient to support a finding that The Children's Guild was an appropriate placement for W.S.  And this is so even though the record contains some evidence suggesting that The Children's Guild might have been able to manage students with aggressive and violent behaviors, because there is other record evidence that cuts in the opposite direction.  For example, one witness explained that The Children's Guild has worked with students exhibiting aggressive behaviors in the past (*see* Administrative R., ECF No. 9-8, at 21), while other

witnesses suggested that The Children's Guild does not generally accept students with serious aggressive behaviors (*see* Administrative R., ECF No. 9-5, at 47; Administrative R., ECF No. 9-7, at 37).  In the absence of any findings that resolve these discrepancies, the Hearing Officer could not adequately determine whether The Children's Guild was an appropriate placement under the IDEA.  Moreover, even if the Court were to assume for purposes of analysis that The Children's Guild was *not* an appropriate placement for W.S., the record does not contain sufficient information to permit the Court to assess whether Plaintiffs are entitled to the tuition reimbursement that is the object of their complaint.  The Hearing Officer did not discuss whether The Auburn School was a proper placement under the IDEA, and neither the Hearing Officer nor the parties have addressed whether the equities warrant tuition reimbursement.  *See Forest Grove Sch. Dist.*, 557 U.S. at 247.

Accordingly, the Court concludes that this matter should be remanded to OSSE, where the Hearing Officer can make the necessary findings in the first instance.  *See, e.g.*, *M.O. v. District of Columbia*, 20 F. Supp. 3d 31, 41 (D.D.C. 2013) (remanding an IDEA case to the hearing officer for further consideration of the evidence).  In the meantime, the Court will adopt the unobjected to analysis and conclusions of the Report and Recommendation concerning Plaintiffs' other challenges to the District of Columbia's school placement decision—conclusions of the Magistrate Judge with which the Court fully agrees—and will grant in part Plaintiffs' motion for summary judgment, to the extent that Plaintiffs have demonstrated that the Hearing Officer's placement determination is not fully supported because it lacks an administrative finding concerning The Children's Guild's ability to manage W.S.'s aggressive behaviors.

## III.    CONCLUSION

For the reasons discussed above, and as set forth in the separate Order that accompanies this Memorandum Opinion, the Court will **ADOPT** Magistrate Judge Robinson's Report and Recommendation in its entirety.  Accordingly, Plaintiffs' Motion for Summary Judgment (ECF No. 10) will be **GRANTED IN PART**, and only insofar as it has demonstrated the need for further administrative proceedings regarding the ability of The Children's Guild to manage W.S.'s aggressive behaviors. Defendant's Cross-Motion for Summary Judgment (ECF No. 11) will be **DENIED WITHOUT PREJUDICE**, and with the understanding that Defendant may file a renewed summary judgment motion after the Hearing Officer has determined whether The Children's Guild could have accommodated W.S.'s aggressive behaviors as his IEP required, and, if not, whether Plaintiffs are nonetheless entitled to tuition reimbursement.  This matter will therefore be **REMANDED** to OSSE for further proceedings regarding whether The Children's Guild could have managed W.S.'s aggressive conduct, and whether Plaintiffs must be reimbursed for the year W.S. attended The Auburn School.  Should the Hearing Officer determine on remand that The Children's Guild could have accommodated W.S.'s aggression, and thus that no alternative placement was warranted, the Court recommends that the Hearing Officer nevertheless make alternative findings about Plaintiffs' entitlement to reimbursement, in order to facilitate an expedient resolution of the case in the event that the parties appeal the Hearing Officer's decision.

DATE:  November 12, 2020

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

**Appendix A**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

W.S., *et al.*,

        Plaintiffs,

    v.

DISTRICT OF COLUMBIA,

        Defendant.

Civil Action No. 19-1390
KBJ/DAR

## REPORT AND RECOMMENDATION

W.S. and W.S.'s parents, W.S. and E.S., commenced this action for injunctive and declaratory relief pursuant to the Individuals with Disabilities Education Act ("IDEA") 20 U.S.C. §§ 1400 *et seq.*, seeking judicial review of a final decision of the District of Columbia Office of the State Superintendent of Education with respect to W.S., a student who is eligible for special education and related services. *See* Complaint for Declaratory Judgment & Injunctive and Other Relief ("Complaint") (ECF No. 17) at 1. In their Complaint, Plaintiffs claim that the District of Columbia Public Schools ("DCPS") violated the IDEA by denying W.S. a free appropriate public education ("FAPE") by "fail[ing] to propose an appropriate program and placement for W.S. for the 2018-19 school year." *Id.*

Pending for consideration by the undersigned United States Magistrate Judge are the parties' motions for summary judgment. *See* Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion") (ECF No. 10); Defendant District of Columbia's Cross Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment ("Defendant's Motion") (ECF No. 11). Upon consideration of the motions, the memoranda in support thereof

**Appendix A**

W.S., et al., v. District of Columbia

and in opposition thereto, and the entire administrative record, the undersigned will recommend

that Plaintiffs' Motion be granted, and that Defendant's Motion be denied.

## I.    BACKGROUND

### A.    *Factual Background*

W.S., a student who resides in the District of Columbia, has been diagnosed with Autism

Spectrum Disorder ("ASD"), Attention Deficit Hyperactivity Disorder- Combined Type

("ADHD"), and an Anxiety Disorder.[1]  *See* Administrative Record ("AR") (ECF Nos. 7, 8, 9) at

345, 1154-57.  W.S. is eligible for services under the IDEA as a student with Autism.  *Id.* at 355,

1159.

W.S. attended pre-Kindergarten at Creative Minds International Public Charter School

("Creative Minds") at the age of three.  *Id.* at 1152.  Creative Minds helped to draft an IEP for

W.S. which called for a dedicated aide to address W.S.'s behavioral issues.  *Id.* at 1260, 1263.  In

January 2016, while W.S. was enrolled at Creative Minds, W.S.'s parents hired Dr. Laura

Solomon, an educational consultant, to reevaluate W.S. for special education services.  *Id.* at

1152-53.

For the 2016-17 and 2017-18 school years, W.S. attended Janney Elementary School

("Janney"), W.S.'s neighborhood school.  *Id.* at 1154-55.  During the 2016-17 school year, W.S.

continued to have a dedicated aide and made progress according to several measures.  *Id.* at 328,

439, 1155, 1261.  Starting in the next school year, however, W.S. began to exhibit behavioral

problems, which included throwing objects, spitting, name-calling, and pushing.  *Id.* at 328, 697-

---

[1] With the exception of the Administrative Record and any document without page numbering automatically generated by the Court's Electronic Case Files ("ECF") system, the undersigned cites to the page numbers automatically generated by the Court's ECF system.  For the Administrative Record or any document not bearing ECF-generated page numbers, the undersigned uses the page numbering provided by the parties.

**Appendix A**

W.S., et al., v. District of Columbia

99, 1173. W.S. was also "frequently violent" by kicking, spitting, biting, threatening, stabbing,

and attempting to poison others. *Id.* at 697. In spite of "individualized interventions" during the

school year, W.S. still exhibited these behaviors. *Id.* at 713. W.S.'s academic and other progress

suffered. *Id.* at 713, 735-40.

In May 2018, W.S.'s parents hired another educational consultant, Dr. Rosebeth Marcou,

to evaluate W.S. *Id.* at 326-50. In a report dated June 1, 2018, Dr. Marcou diagnosed W.S. with

ASD, ADHD, and an Anxiety Disorder after completing a document review, classroom

observation, and testing of W.S. *Id.* Questionnaires from teachers revealed that W.S. was

imaginative and curious, but that attention and behavioral issues interfered in the classroom. *Id.*

at 331-34. This finding was consistent with Dr. Marcou's classroom observations, where W.S.

could be impulsive and aggressive towards others. *Id.* at 335-40. On the KBIT-2 Kaufman Brief

Intelligence Test, W.S. scored a 123 composite IQ score. *Id.* at 343. Dr. Marcou recommended

that the IEP be adapted "to reflect a primary diagnosis of [ASD,]" which, "[i]n conjunction with

[W.S.'s] ADHD and Anxiety create educational impact of a significant nature." *Id.* at 346.

Further, Dr. Marcou opined that W.S.'s "placement should be in a small, highly structured,

special education placement that can accommodate children with ASDs" and that W.S.'s "special

education program must include classmates with similar language and cognitive profiles (i.e.

verbal peers with at least average cognitive abilities.)" *Id.*

On June 4, 2018, the IEP team reconvened to determine an IEP for the coming 2018-19

school year. *Id.* at 712. In reviewing the record, the IEP concluded that W.S. required a full-

time special education placement. *Id.* at 729-31. The District of Columbia Office of the State

Superintendent ("OSSE") subsequently convened a "Change in Placement" meeting on July 18,

2018. *Id.* at 1165-66, 1269. At the meeting, W.S.'s parents and Dr. Solomon requested

**Appendix A**

W.S., et al., v. District of Columbia

consideration of the Auburn School, but OSSE did not consider the Auburn School because it did not have a certificate of approval.  *Id.* at 381, 393, 1271.  On July 30, 2018, OSSE identified three other potential schools for W.S., one of which was The Children's Guild.  *Id.* at 383.  Dr. Solomon responded by saying that The Children's Guild "couldn't be more inappropriate."  *Id.* at 382.

W.S.'s parents visited The Children's Guild on August 1, 2020.  *Id.* at 1272-73.  W.S.'s mother concluded that it was not an appropriate school for W.S. because, on her visit, she perceived a lack of verbal interactions between students and teachers, and observed that the students there were lower functioning and more non-verbal than W.S.  *Id.* at 1273-76.  Based on this information, she believed that The Children's Guild was not "a place where [W.S.] would thrive and make progress."  *Id.* at 1278.

Of the three potential schools that OSSE identified, W.S. was accepted only at The Children's Guild.  *Id.* at 380-82.  After visiting the Auburn School and arranging for W.S. to attend a summer program there, W.S.'s parents arranged for W.S. to attend the Auburn School for the 2018-19 school year.  *Id.* at 440, 1280.  On August 10, 2018, OSSE emailed a "Notice of Location Assignment" for the 2018-19 school year, which provided for placement at The Children's Guild.  *Id.* at 386, 388.  On the same day, W.S.'s parents notified DCPS and OSSE that W.S. would attend the Auburn School for the 2018-19 school year.  *Id.* at 385.  On August 13, 2018, DCPS declined to fund placement at the Auburn School and asserted that DCPS had "made a FAPE available . . . with an appropriate IEP and a placement at The Children's Guild[.]"  *Id.* at 394.  W.S.'s parents filed a due process complaint on August 21, 2018 which sought funding for W.S. to attend the Auburn School for the 2018-19 school year.  *Id.* at 313.

**Appendix A**

W.S., et al., v. District of Columbia

W.S.'s parents subsequently asked The Children's Guild to allow Dr. Solomon to observe The Children's Guild, a request for which DCPS and OSSE did not assist. *Id.* at 405-07. W.S.'s parents filed a motion with the Hearing Officer to permit such observation, which the Hearing Officer granted. *Id.* at 416-21. Based on this observation, Dr. Solomon prepared a report detailing her conclusion that The Children's Guild was inappropriate for W.S. *See id.* at 612-24. Specifically, Dr. Solomon observed that the proposed class for W.S. consisted of students in Kindergarten through second grade, that staff did not engage in any behavior shaping or behavior correcting even when students exhibited maladaptive or noncompliant behaviors, and that there was no differentiation in instruction between students in different grades. *Id.* at 619-23. Dr. Solomon also said in her report that The Children's Guild "does not accept children with aggressive behaviors[,]" that The Children's Guild did not use individualized behavioral intervention plans, and that, despite The Children's Guild describing itself as using TEACCH, Dr. Solomon did not observe the use of TEACCH in the classroom. *Id.* at 623-24.

Plaintiffs presented the testimony of four witnesses: Dr. Solomon, Dr. Marcou, Geoff Wheeler, a behavior specialist at the Auburn School, and W.S.'s mother. *Id.* at 6, 23. Defendant presented the testimony of Dr. Shellie Wood, the Special Education Coordinator and LEA Representative at Janney Elementary. *Id.* OSSE presented the testimony of Katie Reda, a special programs manager for OSSE. *Id.*

### B.   *Summary of Hearing Officer Determination*

The following issue was adjudicated by the Hearing Officer: "Did Respondents fail to provide the Student with an appropriate school/location/placement for the 2018-19 school year? If so, did Respondents deny the Student a Free and Appropriate Public Education ('FAPE')?" AR at 6.

**Appendix A**

W.S., et al., v. District of Columbia

In a 19-page Hearing Officer Determination ("HOD"), the Hearing Officer discussed the evidence presented during the administrative proceedings and articulated his findings. *See id.* at 4-22.  The Hearing Officer noted that, in some cases, a plaintiff may bring a claim base on "the appropriateness of an assigned school, even if the IEP is appropriate." *Id.* at 13.  In this case, however, the Hearing Officer found that The Children's Guild was an appropriate school, notwithstanding the contrary reports and testimony from Plaintiffs and Plaintiffs' experts. *Id.* at 20.  The Hearing Officer credited other evidence indicating "that the Student's needs would be met at [The Children's Guild], which offers small classrooms, a culture that reinforces positive behavior and downplays negative aspects, and the opportunity for the Student to have direct behavior plans[.]" *Id.*  Moreover, the Hearing Officer credited other evidence from The Children's Guild which tended to show that the school individualizes its behavior plans for students, that the students' functioning there is average to above average, and that the school uses TEACCH systems. *Id.*  Thus, according to the Hearing Officer, Plaintiffs did not present a prima facie case that Defendant failed to offer W.S. a FAPE for the 2018-19 year. *Id.* at 20.  Moreover, the Hearing Officer concluded, even if Plaintiffs did present a prima facie case, Defendant met its burden of persuasion that it offered W.S. a FAPE. *Id.*

## II.   CONTENTIONS OF THE PARTIES

### A.   *Plaintiffs' Motion*

Plaintiffs argue that the Hearing Officer mistakenly concluded that Plaintiffs had not established a prima facie case under the IDEA.  Plaintiffs' Motion at 13.  Under the law establishing the burden-shifting framework and analogous precedents, Plaintiffs contend that

**Appendix A**

W.S., et al., v. District of Columbia

"[t]he standard to establish a prima facie case is certainly not a high one[,]" and that, given the extensive evidence submitted at the hearing, Plaintiffs easily meet this standard. *Id.* at 13-15.

Plaintiffs further maintain that the Hearing Officer erred in alternatively finding that Defendant met its burden to show that The Children's Guild was an appropriate placement for W.S. *Id.* at 16. Specifically, Plaintiffs point to the fact that no one from The Children's Guild testified at the hearing, Defendant's witnesses had little to no familiarity with The Children's Guild or the facts of this case, and that the brochure upon which the Hearing Officer relied was not for W.S.'s school or any school at all, but rather an outpatient clinic that shared a similar name. *Id.* at 16-17. Plaintiffs contend that the Hearing Officer also ignored crucial evidence concerning W.S.'s aggressiveness, and mischaracterized other evidence. *Id.* at 17-20.

Next, Plaintiffs argue that Defendant failed to consider W.S.'s unique needs as a "twice-exceptional student" in considering W.S.'s educational placement, and that the Hearing Officer failed to address this important factor. *Id.* at 20-22. Plaintiffs point to the testimony of Plaintiffs' experts, who stated that W.S. exhibited high intelligence which needed to be addressed in W.S.'s IEP and placement. *Id.* at 22-25. According to Plaintiffs, none of the evidence upon which the Hearing Officer relied did not demonstrate that the program at The Children's Guild could meet these unique needs. *Id.* at 25-27.

Plaintiffs also contend that the Hearing Officer improperly discounted Plaintiffs' witnesses and credited Defendant's sole witness. *Id.* at 27-28. Plaintiffs characterize the testimony of Plaintiffs' experts and W.S.'s mother as based on firsthand information about W.S. and the schools in question and the testimony of Defendant's expert witness as lacking on those questions. *Id.* at 28-30.

**Appendix A**

W.S., et al., v. District of Columbia

Further, Plaintiffs maintain that the Hearing Officer erred in suggesting that W.S.'s parents acted in bad faith. *Id.* at 31. Plaintiffs contend that, contrary to the Hearing Officer's suggestions, W.S.'s parents and Plaintiffs' experts engaged in good-faith efforts throughout the process of implementing W.S.'s IEP. *Id.* at 31-34. Lastly, Plaintiffs argue that the Auburn School is an appropriate location for W.S.'s education, and that W.S.'s parents request for placement there should be granted.[2]

**B.     *Defendant's Cross-Motion and Opposition to Plaintiffs' Motion***

In support of its motion for summary judgment and in opposition to Plaintiffs' Motion, Defendant first argues that the Hearing Officer was correct to conclude that Plaintiffs did not establish a prima facie case that The Children's Guild could not implement W.S.'s IEP. Defendant's Motion at 17. Defendant asserts that Plaintiffs' claim is not cognizable under the IDEA. *Id.* at 18. Alternatively, Defendant maintains that, even if Plaintiffs' claim is cognizable, Plaintiffs did not present evidence demonstrating that The Children's Guild was incapable of implementing W.S.'s IEP. *Id.* at 19-21.

Defendant argues that the Hearing Officer's alternative conclusion that Defendant met its burden of persuasion related to the appropriateness of The Children's Guild is also supported by the administrative record. *Id.* at 21. Defendant contends that Plaintiffs did not present sufficient evidence that The Children's Guild could not implement W.S.'s IEP and that substantial evidence supports the Hearing Officer's determination that The Children's Guild could

---

[2] Plaintiffs subsequently notified this Court that they "are no longer seeking current placement of W.S. at Auburn School" and that the only remaining issue is whether Plaintiffs are entitled to reimbursement at the Auburn School for the 2018-2019 school year. Plaintiffs' Notice Regarding Relief Sought (ECF No. 16). Thus, the undersigned omits any further discussion of the appropriateness of the Auburn School and whether Plaintiffs are entitled to placement there.

**Appendix A**

W.S., et al., v. District of Columbia

implement the IEP.  *Id.* at 21-24.  Moreover, according to Defendant, each of Plaintiffs'

objections to Children's Guild are without merit and adequately addressed in the HOD.  *Id.* at

22-30.

Defendant next responds to Plaintiffs' arguments concerning W.S.'s "twice-exceptional"

status by arguing that any programmatic needs were included in W.S.'s IEP.  *Id.* at 30.

Defendant characterizes Plaintiffs' position as without support in the text of the IDEA or any

relevant caselaw.  *Id.* at 30-33.

Defendant also maintains that the Hearing Officer is entitled to deference concerning how

much weight to give to various witness testimony and other evidence.  *Id.* at 33.  Defendant

argues that the Hearing Officer properly considered the testimony of Plaintiffs' witnesses and

explained the basis for how much weight to give various evidence.  *Id.* at 33-37.  Moreover,

Defendant maintains that, even if the Hearing Officer erred in making credibility determinations,

this was not a reversible error because it does not affect the central issue upon which no witness

disputed: "whether Children's Guild can implement W.S.'s IEP."  *Id.* at 36.

### C.   *Plaintiffs' Opposition and Reply*

In opposition to Defendant's Motion and in reply to Defendant's opposition to Plaintiffs'

Motion, Plaintiffs argue that they allege a cognizable claim under the IDEA because, unlike the

cases upon which Defendant relies, Plaintiffs challenge the adequacy of the educational

programming at The Children's Guild, not the location of services.  Plaintiffs' Opposition to

Defendant's Cross Motion for Summary Judgment and Reply to Defendant's Opposition to

Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Reply") (ECF No. 13) at 2-4.  Thus,

according to Plaintiffs, the Hearing Officer erred in finding that Plaintiffs had not established a

prima facie case.  *Id.*

**Appendix A**

W.S., et al., v. District of Columbia

Plaintiffs also argue that Defendant overlooks the timing of W.S.'s IEP, placement at The Children's Guild, and ability to find an alternative school.  *Id.* at 4-6.  Plaintiffs maintain that they could not have known their concerns about The Children's Guild until Dr. Solomon visited and thus, it was impossible for Plaintiffs to include their concerns in W.S.'s IEP and Dr. Solomon's testimony was not "post hoc."  *Id.* at 4-7.  Plaintiffs contend that Defendant also misunderstands the core issue at stake here, which is not simply whether W.S.'s IEP is adequate, but includes whether W.S.'s placement resulted in a denial of FAPE.  *Id.* at 7-12.

In response to Defendant's assertion that this Court owes Hearing Officer's credibility determinations some deference, Plaintiffs argue that the Hearing Officer offered no cogent explanation of crediting some testimony over others and, moreover, no one testified that The Children's Guild was an appropriate placement for W.S.  *Id.* at 13-14.  Plaintiffs also argue that Defendants, just like the Hearing Officer, overlook important aspects of W.S.'s "twice-exceptional" status and that this status should have been addressed in W.S.'s placement, not just W.S.'s IEP.  *Id.* at 14-16.


**D.**   ***Defendant's Reply***

In reply to Plaintiffs' opposition, Defendant reiterates that Plaintiff did not establish a prima facie case because Plaintiffs' claim is not cognizable under the IDEA because Plaintiffs did not challenge whether The Children's Guild was capable of implementing W.S.'s IEP, the core question in this case.  Defendant District of Columbia's Reply in Support of Its Cross Motion for Summary Judgment ("Defendant's Reply") (ECF No. 15) at 1-4.  Moreover, according to Defendant, even if Plaintiffs established a prima facie case, the Hearing Officer did not err in finding that Defendant met its burden of persuasion that The Children's Guild was capable of implementing W.S.'s IEP.  *Id.* at 5.

**Appendix A**

W.S., et al., v. District of Columbia

Defendant maintains that Plaintiffs' argument concerning the chronology of events here is a "red herring" because Plaintiffs had the opportunity to object to W.S.'s IEP and investigate whether The Children's Guild could implement the IEP.  *Id.* at 5-6.  Moreover, Defendant asserts, the chronology does not support Plaintiffs' version of events because Plaintiffs previously asserted that Dr. Solomon was familiar with The Children's Guild prior to her observation, and her observations were, in effect, critiques of the IEP, not The Children's Guild. *Id.* at 7.

Defendant also asserts that Plaintiffs' reliance on certain caselaw is unavailing because none of Plaintiffs' cited cases stand for the proposition that an "educational placement" should be evaluated in the manner as an IEP.  *Id.* at 8-10.  Lastly, Defendant reiterates that the Hearing Officer properly made credibility determinations and that W.S.'s "twice-exceptional" status has no bearing on this case because it was not included in W.S.'s IEP.  *Id.* at 10-13.

## III.    STATUTORY FRAMEWORK

The IDEA was enacted to "ensure that all children with disabilities have available to them free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  *M.G. v. Dist. of Columbia*, 246 F. Supp. 3d 1, 7 (D.D.C. 2017) (citing 20 U.S.C. § 1400(d)(1)(A); 34 C.F.R. § 300.300; *see also Boose v. Dist. of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015).  Indeed, this court has held that "DCPS has a fundamental obligation to provide FAPE to a child with a disability residing in the District of Columbia." *M.G.*, 246 F. Supp 3d at 7 (citing *Dist. of Columbia v. Abramson*, 493 F. Supp 2d 80, 84 (D.D.C. 2007).

**Appendix A**

W.S., et al., v. District of Columbia

The IDEA requires "[a]t the beginning of each school year, each local educational

agency . . . have in effect, for each child with a disability in [its] jurisdiction, an individualized

education program[.]"  20 U.S.C. § 1414(d)(2)(A).  The IEP "is 'the centerpiece of the statute's

education delivery system for disabled children[.]'"  *Endrew F. ex rel. Joseph F., Douglas Cty.*

*Sch. Dist. RE-1*, 137 S. Ct. 988, 994 (2017) (citation omitted).  An IEP must be developed in

accordance with statutory requirements, *see* 20 U.S.C. § 1414(d)(1)(B), which "emphasize

collaboration among parents and educators[,] and require careful consideration of the child's

individual circumstance."  *Id.*  The Supreme Court also reaffirmed the proposition that the

substantive requirement of the Act is satisfied—and thus an eligible child has received a FAPE—

"if the child's IEP sets out an educational program that is 'reasonably calculated to enable the

child to receive educational benefits.'"  *Endrew F.*, 137 S. Ct. at 999 (quoting *Bd. of Ed. of*

*Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 207 (1982)).


**IV.    APPLICABLE STANDARD OF REVIEW**

A parent, or adult student, may file an administrative complaint and have an opportunity

for an impartial due process hearing if he or she objects to the "identification, evaluation, or

educational placement of the child, or the provision of a free appropriate public education to such

child."  20 U.S.C. § 1415(b)(6), (f)(1).  Further, the IDEA provides a statutory right to

commence a civil action in state or federal court for "any party aggrieved by the findings and

decisions" of a hearing officer.  *Id.* § 1415(i)(2)(A).  Under the IDEA, "the [reviewing] court (i)

shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at

the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall

grant such relief as the court determines is appropriate."  *Id.* § 1415(i)(2)(C); *see also* 34 C.F.R.

**Appendix A**

W.S., et al., v. District of Columbia

§ 300.516(c).  The IDEA gives the court "broad discretion" to fashion appropriate remedy to provide a FAPE.  *Boose*, 786 F.3d at 1056.

In a civil action challenging a hearing officer's decision under the IDEA, "[a] motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the court may receive."  *D.R. v. Dist. of Columbia*, 637 F. Supp. 2d 11, 16 (D.D.C. 2009).  Where neither party submits additional evidence for the court's review, "the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record."  *M.G.*, 246 F. Supp. 3d at 7 (citations omitted).

This Circuit has explained that "given the district court's authority to hear additional evidence . . . and base its decision on the preponderance of the evidence, 20 U.S.C. §§ 1415(i)(2)(B)(ii), (m), the IDEA plainly suggests less deference than is conventional in administrative proceedings."  *Reid ex rel. Reid v. Dist. of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989)) (internal quotation marks omitted).  Courts must afford "due weight" to the state administrative proceedings and avoid "substitut[ing] their own notions of sound educational policy for those of the school authorities they review."  *Rowley*, 458 U.S. at 206.  However, "a hearing decision 'without reasoned and specific findings deserves little deference.'"  *Reid*, 401 F.3d at 521 (quoting *Kerkam*, 931 F.2d at 87) (internal quotation marks omitted); *see also M.O. v. Dist. of Columbia*, 20 F. Supp. 3d 31, 40 (D.D.C. 2013) ("[W]hile a certain amount of deference should be accorded to the knowledge and expertise of the hearing officer, courts will accord less deference if the hearing officer's determination lacks reasoned and specific findings.").  Additionally, "a hearing officer's findings 'based on credibility determinations of live witness testimony' are given

**Appendix A**

W.S., et al., v. District of Columbia

'particular deference' where there is no supplementation of the record." *McAllister v. Dist. of Columbia*, 45 F. Supp. 3d 72, 76-77 (D.D.C., 2014) (finding that "[t]he hearing officer was entitled to make reasonable credibility determinations and, in the absence of extrinsic evidence to the contrary, those determinations are entitled to deference from this Court").

Moreover, "[a] court is obligated by the IDEA to ensure that [the] relief set forth in the administrative award was appropriate" and the court "may not simply rely on the Hearing Officer's exercise of discretion." *Turner v. Dist. of Columbia*, 952 F. Supp. 2d 31, 36 (D.D.C. 2013) (internal quotation marks and citations omitted). The party challenging the hearing officer's decision "take[s] on the burden of persuading the court that the hearing officer was wrong." *Id.* at 35 (internal quotation marks omitted); *see also Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005) (finding that the burden of proof in an administrative hearing concerning an IEP is upon the party seeking relief).

## V.     DISCUSSION

"[T]he term 'educational placement' is not expressly defined by the IDEA[.]" *Ward v. Dist. of Columbia*, No. 13-cv-00098, 2014 WL 272413, at *6 (D.D.C. Jan. 24, 2014). Courts in this Circuit have nonetheless defined educational placement as "something between the physical school attended by a child and the abstract goals of a child's IEP." *Id.* (citation omitted). A change in a child's physical location of services cannot, by itself, form the basis of a cause of action under the IDEA. *See Bowling v. Dist. of Columbia*, No. 11-cv-2145, 2013 WL 5214948, at *4 (D.D.C. Sept. 16, 2013). A plaintiff may challenge an educational placement under the IDEA, however, if the placement is not "capable of substantially implementing [a child's] IEP." *Johnson v. Dist. of Columbia*, 962 F. Supp. 2d 263, 268 (D.D.C. 2013).

14

**Appendix A**

W.S., et al., v. District of Columbia

Plaintiffs urge a less restrictive standard and argue that the Hearing Officer should have assessed whether W.S.'s placement at The Children's Guild was "reasonabl[y] calculated to enable [a child] to progress appropriate[ly] in light of his circumstances[.]"  Plaintiffs' Reply at 7 (citing *Middleton v. Dist. of Columbia*, 312 F. Supp. 3d 113, 143 (D.D.C. 2018)).  This proposed standard, which courts use to assess the appropriateness of an IEP, does not account for the differences between review of an IEP and review of an educational placement.  Unlike review of an IEP, review of an educational placement is defined by whether a school district has "offer[ed] placement in a school and in programming that can fulfill the requirements set forth in the student's IEP."  *Middleton*, 312 F. Supp. 3d at 143.  The IEP, as the "centerpiece" of the IDEA, is also the centerpiece for a court's review of whether an educational placement is appropriate.  *Endrew F.*, 137 S. Ct. at 994 (citation omitted); *Johnson*, 962 F. Supp. 2d at 267; *see also* 34 C.F.R. § 300.116(b)(2) (requiring that "a child's placement . . . is based on the child's IEP").  Where, as here, the IEP is not at issue, a plaintiff challenging an educational placement is effectively alleging a failure to implement the IEP.  *Johnson*, 962 F. Supp. 2d at 268; Plaintiffs' Reply at 7 ("[P]laintiffs have never argued that there were any concerns with the IEP itself.")  Courts therefore focus on "the IEP as written" to determine whether an educational placement is "capable of substantially implementing [a student's] IEP."  *Johnson*, 962 F. Supp. 2d at 267-68 (citing *Hinson ex rel. N.H. v. Merritt Educ. Ctr.*, 579 F. Supp. 2d 89, 104 (D.D.C. 2008)); *see also O.O. ex rel. Pabo v. Dist. of Columbia*, 573 F. Supp. 2d 41, 53-54 (D.D.C. 2008); *Roark ex rel. Roark v. D.C.*, 460 F. Supp. 2d 32, 44 (D.D.C. 2006) ("To determine whether [a] placement was appropriate, one must refer to the IEP.").

**A.  The Hearing Officer Erred in Concluding That Plaintiffs Did Not Establish a Prima Facie Case**

15

**Appendix A**

W.S., et al., v. District of Columbia

In due process hearings involving challenges to a "child's individual educational program or placement, or of the program or placement proposed by the public agency," the party bringing the challenge bears an initial "burden of production" of establishing a "prima facie case[.]"  D.C. Code § 38-2571.03(6)(A)(i).  If a challenging party meets its burden of production, a "burden of persuasion falls on the public agency" to establish "the appropriateness of the existing or proposed program or placement[.]"  *Id.*  While the D.C. Code does not define "prima facie case" or what would satisfy Plaintiffs' "burden of production," and no court in this Circuit appears to have addressed the issue, the undersigned nonetheless finds that the Hearing Officer applied the wrong standard under any definition.  *Id.*

Generally speaking, a burden of production requires only that a party "produce enough evidence . . . to justify sending the case to [a] jury."  21B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 5122 (2d ed. Supp. 2020); *see also Burden of Production*, Black's Law Dictionary (11th ed. 2019) ("A party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder, rather than decided against the party in a peremptory ruling such as a summary judgment or a directed verdict.").  Across different areas of substantive law, courts find that the burden of production for a prima facie case is low.  *See* 21B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 5122 (2d ed. Supp. 2020) ("[T]he burden of production weighs less than the burden of persuasion.").  For disparate-impact causes of action under Title VII of the Civil Rights Act, for example, establishing a prima facie case is "not onerous" and the application of its requirements should not "be rigid, mechanized, or ritualistic[.]"  *Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006) (citation omitted).  In antitrust cases involving Section 7 of the Clayton Act, 15

**Appendix A**

W.S., et al., v. District of Columbia

U.S.C. § 18, "it is easy to establish a prima facie case." *United States v. Baker Hughes Inc.*, 908 F.2d 981, 992 (D.C. Cir. 1990).

The Hearing Officer appears to have applied a more stringent standard, stating that Plaintiffs had not met their burden of production "largely because [Dr. Solomon's] observation report and testimony came across as a post-hoc justification for [Plaintiffs'] unilateral decision to place [W.S.] in [the Auburn School.]"[3] AR at 20. Of course, a Hearing Officer is entitled to some deference in assessing witness credibility and weighing evidence. *See McAllister*, 45 F. Supp. 3d at 77. In determining the sufficiency of a prima facie case, however, a hearing officer must determine whether, after considering all of a plaintiff's evidence, a reasonable trier of fact could find in favor of the plaintiff.

The Hearing Officer therefore erred in two ways. First, the Hearing Officer merely stated his own opinion about the persuasiveness of a particular, key witness rather than assessing whether a reasonable trier of fact could find in Plaintiffs' favor. Second, the Hearing Officer failed to consider all of Plaintiffs' evidence which included, *inter alia*, W.S.'s parent's testimony, and whether this evidence supported Plaintiffs' contention that The Children's Guild was inappropriate. Rather than applying this standard in the first instance, the undersigned recommends that, on remand, the Hearing Officer apply the foregoing framework in determining whether Plaintiffs established a prima facie case that The Children's Guild was not "capable of substantially implementing [W.S.'s] IEP." *Johnson*, 962 F. Supp. 2d at 268.

---

[3] The Hearing Officer also stated, in a footnote, "that at least one court has held that defects in placement are only actionable where they are reasonably apparent to the parent or the district at the time of the placement decision." AR at 20 n.3 (citing *E.A.M. v. New York City Dep't of Educ.*, No. 11 CIV. 3730 LAP, 2012 WL 4571794, at *11 (S.D.N.Y. Sept. 29, 2012)). The undersigned reads this as legal support for the Hearing Officer's conclusion that Dr. Solomon's testimony was post hoc and not, as Defendant urges, a conclusion that Plaintiffs' cause of action is not cognizable under the law. The undersigned therefore declines to address Defendant's argument that the Hearing Officer's conclusion regarding Plaintiffs' prima facie case can be affirmed on this ground. *See SEC v. Chenery*, 332 U.S. 194, 196 (1947) (holding that a court "may not supply a reasoned basis for the agency's action that the agency itself has not given").

**Appendix A**

W.S., et al., v. District of Columbia

### B.  With One Exception, the Hearing Officer Did Not Err in Concluding That Defendant Met Its Burden of Persuasion

Plaintiffs fault the Hearing Officer for mischaracterizing or omitting evidence, ignoring W.S.'s twice-exceptional status, failing to make proper credibility determinations, and questioning W.S.'s parents' good faith.  Plaintiffs' Motion at 16-34.  For the reasons that follow, the undersigned finds that, with one exception, Defendant met its burden of persuasion because Plaintiffs' purported requirements for an educational placement have no basis in W.S.'s IEP. The undersigned alternatively finds that, with one exception, the Hearing Officer made reasoned and specific findings with respect to all of issues presented in Plaintiffs' due process complaint, whether they were included in the IEP or not.  The Hearing Officer erred in his treatment of W.S's aggressive behaviors, however, because they were central to the IEP and not addressed in the HOD.

### 1.  Defendant Met Its Burden of Persuasion In Demonstrating that Most of Plaintiffs' Purported Requirements Have No Basis in W.S.'s IEP

The Hearing Officer properly concluded that Defendant met its burden of persuasion by establishing that Plaintiffs' purported requirements for any educational placement were not contained within W.S.'s IEP.  In their amended due process complaint, Plaintiffs listed nine "concerns" regarding The Children's Guild:

> 1. There is insufficient academic challenge for [W.S.], given [W.S.'s] cognitive ability and unique circumstances.
> 2. The student population appears inappropriate for [W.S.].
> 3. CG [Children's Guild] does not accept children with aggressive behaviors, which [W.S.] has demonstrated for more than two years.
> 4. There is a noticeable lack of differentiation in instruction.
> 5. There is a noticeable absence of behavior-shaping, which [W.S.] clearly needs.

18

**Appendix A**

W.S., et al., v. District of Columbia

>    6. There is no evidence of the use of TEACCH, which is supposedly used in the school.
>    7. There was no use of ABA (Applied Behavior Analysis) at CG [Children's Guild],
>    which [W.S.] requires.
>    8. The behavioral system, PBIS, is not individually targeted for the students.
>    9. There is an insufficient availability of the sensory room for preventative intervention.

AR at 611.[4]  With the exception of the third concern, W.S.'s then-operative IEP does not

mention these purported requirements.  *Id.* at 712-40.  These concerns not found in the IEP

cannot form the basis of an educational placement challenge because the question here is

whether The Children's Guild was "capable of substantially implementing [W.S.'s] IEP."

*Johnson*, 962 F. Supp. 2d at 268.

Outside the IEP, the record does include references to, for example, W.S.'s "cognitive

ability and unique circumstances."  AR at 343 (revealing a high IQ score), 1160-61 (testimony

concerning twice-exceptional status as a very bright student with certain disabilities).  This

consideration could conceivably bear on whether W.S. required an educational placement with

similar peers and a certain level of differentiation in instruction.  *See id.* at 611.  The appropriate

time to address these concerns, however, was the IEP meeting.  *See, e.g.*, 20 U.S.C. §

1414(d)(3)(B)(i) (requiring that the IEP team "consider the use of positive behavioral

interventions and supports, and other strategies").

Urging a contrary conclusion, Plaintiffs point to the dilemma that W.S.'s parents faced in

July and August 2018.  Plaintiffs' Reply at 4-6.  Defendant identified three schools for W.S. on

July 30, 2018.  AR at 383.  W.S.'s parents had to make a decision about whether to attend a

school not identified by Defendant by August 10, 2018.  *See id.* at 558; 34 C.F.R. § 300.148(d)

---

[4] The undersigned can find no specific reference to this list of concerns in the amended due process complaint itself, but Plaintiffs assert, and Defendants do not contest, that these issues were properly before the Hearing Officer.  *See* AR at 306-14; *see also*, *generally*, Defendant's Motion.

**Appendix A**

W.S., et al., v. District of Columbia

(requiring notice of rejection at least ten days before removal).  Between those dates, W.S.'s parents quickly and diligently worked to find a school which could accommodate W.S.'s needs. The undersigned is sympathetic to the difficulty W.S.'s parents faced in making important decisions in a short amount of time.  This rushed timeframe, however, demonstrates why the IDEA does not require, as Plaintiffs effectively urge, a *de novo* determination of W.S.'s programming at the time of a new educational placement.  An IEP is a "comprehensive plan" for all of a child's programming needs which is produced only after "collaboration among parents and educators and . . . careful consideration of the child's individual circumstances." *Endrew F.*, 137 S. Ct. at 994.  In making a decision concerning W.S.'s educational placement, Defendant reasonably relied on W.S.'s IEP, a prospective and "comprehensive plan[.]"  *Id.*

Plaintiffs cite no precedent or provision of the IDEA which demands a contrary conclusion.  In particular, Plaintiffs' reliance on *Eley v. District of Columbia*, 47 F. Supp. 3d 1 (D.D.C. 2014), is misplaced.  The court there considered the definition of "educational placement" to determine whether the stay-put provision of the IDEA applied to a change in schools.  *Id.* at 7 (citing 20 U.S.C. § 1415).  Thus, the court did not consider whether the educational placement was appropriate, only which school should be considered the child's "then-current educational placement" while proceedings under the IDEA were pending.  *Id.* at 17 (citation omitted).  As in *Johnson*, the question here is whether an educational placement deprived a child of a FAPE, a question which turns on whether the placement is capable of substantially implementing a child's IEP.  962 F. Supp. 2d at 268.  The undersigned therefore finds no error in the HOD with respect to all issues contained in Plaintiffs' due process complaint except for the third.

**Appendix A**

W.S., et al., v. District of Columbia

### 2.   With One Exception, the Hearing Officer Properly Weighed the Evidence

The remainder of Plaintiffs' objections to the HOD concern the Hearing Officer's treatment of the record evidence.  With the exception of one issue, the undersigned finds that, even if the concerns listed in Plaintiffs' due process complaint were required to be addressed in an educational placement, the Hearing Officer reasonably concluded that The Children's Guild was appropriate.

### a.   The Hearing Officer Made Reasonable Credibility Determinations

Plaintiffs' suggestion that the Hearing Officer ignored Plaintiffs' witness testimony or that Plaintiffs' witnesses "clearly deserved" more weight than Defendant's witnesses is without support in the record or the caselaw in this Circuit.  Plaintiffs' Motion at 27-30.  A hearing officer is "entitled to make reasonable credibility determinations and, in the absence of extrinsic evidence to the contrary, those determinations are entitled to deference from this Court." *McAllister*, 45 F. Supp. 3d at 77.  Far from ignoring Plaintiffs' witness testimony, the Hearing Officer considered and methodically explained why he did not credit specific testimony, statement-by-statement and issue-by-issue.  *See, e.g.*, AR at 19 (concluding that there was sufficient differentiation of instruction because, *inter alia*, Defendant's witness observed differentiation, and Plaintiffs' witness assertion that there was none was based on a single visit). The Hearing Officer, in fact, credited Plaintiffs' witnesses on several questions.  *See id.* at 17-20 (crediting Dr. Marcou's opinions and reports for several issues).

The only broad credibility determination in the HOD is a brief characterization of one witness, Dr. Solomon.[5]  The Hearing Officer found that her testimony seemed like a "post-hoc

---

[5] The Hearing Officer also found that Dr. Solomon's conclusions regarding differentiation of instruction at The Children's Guild were doubtful because it was based on one observation.  AR at 19.  Plaintiffs characterize this as a

**Appendix A**

W.S., et al., v. District of Columbia

rationalization" for placement at the Auburn School.  AR at 20.  This characterization follows an issue-by-issue discussion of how Dr. Solomon's report and testimony were not supported by other evidence.  *Id.* at 17-20.  In that discussion, the Hearing Officer explains that many of the requirements identified by Dr. Solomon were not raised in other reports or W.S.'s IEP and were only raised after W.S.'s parents decided to enroll W.S. at the Auburn School.  *See id.*  Read in context, the Hearing Officer reasonably characterized the report and testimony as "post-hoc" based on this issue-by-issue recitation of the evidence.[6]  AR at 20.

Plaintiffs nonetheless argue that, as a general matter, Plaintiffs' witnesses had more experience with both W.S. and The Children's Guild, and therefore deserved more credence than Defendant's witnesses.  Plaintiffs' Motion at 27-30.  However, Dr. Wood, a witness that the Hearing Officer credited, had more than an adequate foundation of knowledge regarding both topics.  She visited The Children's Guild with Dr. Solomon, saw W.S. in the classroom at Janney Elementary School "almost every day," and had chaired W.S.'s IEP team since 2016.  AR at 1314-15, 1327.  Ms. Reda, the OSSE employee who received and reviewed W.S.'s change in placement request, also observed with Dr. Solomon at The Children's Guild.  *Id.* at 1387-90.  Plaintiffs' contention that these witnesses had no knowledge of W.S. or The Children's Guild has little basis in the record.  *See* Plaintiffs' Motion at 30.  Moreover, even if Plaintiffs' witnesses had more experience with either W.S. or The Children's Guild on paper, the Hearing Officer is still entitled to deference in the absence of "extrinsic evidence" contradicting the Hearing

---

broad, adverse credibility finding, but context reveals that it is limited to that issue.  *See* Plaintiffs' Motion at 18. Plaintiffs are correct that Dr. Solomon, contrary to the Hearing Officer's statement, testified that she observed The Children's Guild more than once.  *See id.* (citing AR at 1194).  Plaintiffs nonetheless do not demonstrate how this inaccuracy affects the Hearing Officer's underlying conclusion that the evidence regarding this issue is wrong.
[6] For a similar reason, this characterization cannot be deemed a finding of "bad faith" as Plaintiffs urge.  *See* Plaintiffs' Motion at 31-34.  Nor can his characterization of W.S.'s mother's testimony be deemed a finding of bad faith.  *See id.*  The undersigned reads these portions of the HOD as reasonable characterizations of the facts.

**Appendix A**

W.S., et al., v. District of Columbia

Officer's credibility determinations.  *McAllister*, 45 F. Supp. 3d at 77.  Thus, the undersigned

finds no reason to disturb the Hearing Officer's credibility determinations.

### b.  With the Exception of Evidence Related to Aggressive Behavior, the Hearing Officer's Conclusions Have a Basis in the Record

In contesting the factual bases for the Hearing Officer's conclusion that the Children's

Guild was an appropriate educational placement, Plaintiffs contend that the Hearing Officer

"merely state[d] that the proposed placement at Children's Guild was appropriate for W.S.

without further explanation and without reconciliation of conflicting evidence in the record."

Plaintiffs' Motion at 21.  With one exception, however, the Hearing Officer discussed each

concern that Plaintiffs raised in their due process complaint with sufficient detail.  For example,

in concluding that there were sufficient "sensory interventions" at The Children's Guild, the

Hearing Officer cited Plaintiffs' own witness' testimony that W.S. could use a "sensory room as

a preventative measure if that was required in the student's Behavior Intervention Plan."  AR at

19.  Plaintiffs do not specifically challenge this factual finding.  Instead, in a scattershot fashion,

Plaintiffs use several examples to show that all of the Hearing Officer's conclusions regarding

the appropriateness of The Children's Guild are flawed.  With the exception of issues related to

W.S.'s aggressive behaviors, these examples do not undermine the Hearing Officer's

conclusions.

Plaintiffs first argue that Plaintiffs' witnesses should have been more persuasive to the

Hearing Officer than Defendant's witnesses.  *See* Plaintiffs' Motion at 17-19.  As discussed

*supra*, the Hearing Officer adequately explained his credibility determinations.  Moreover, even

if Plaintiffs are correct that their witnesses had more experience or familiarity with W.S. or The

Children's Guild, Plaintiffs must still show that the Hearing Officer was somehow "wrong" even

23

**Appendix A**

W.S., et al., v. District of Columbia

after according the Hearing Officer "due weight." *See id.* at 19 ("Dr. Solomon was clearly much more familiar with the program[.]"); *Reid*, 401 F.3d at 521 (citation omitted). Thus, the bulk of Plaintiffs' arguments concerning the superiority of their witnesses are beside the point because these arguments do not address whether the Hearing Officer made reasonable conclusions about W.S.'s needs and whether The Children's Guild could accommodate those needs.

The only two issues that Plaintiffs challenge with any specificity concern The Children's Guild's ability to accommodate W.S.'s aggressive behaviors and whether The Children's Guild could provide individualized behavior plans. The Hearing Officer, however, made reasonable conclusions concerning whether "[t]he behavioral system, PBIS, is . . . individually targeted for the students." AR at 611. The Hearing Officer relied on two pieces of evidence to support the conclusion that the "behavioral system" at The Children's Guild was sufficiently individualized. *Id.* at 20. Dr. Wood testified that PBIS, a program at The Children's Guild, reinforces positive behaviors and that The Children's Guild could complement PBIS with an individualized behavior plan through their staff and other resources. *Id.* at 1332-33. Further, an email from a Special Education Coordinator at The Children's Guild noted that, "if a particular student exhibits an individual need," staff would provide individualized interventions. *Id.* at 403. Plaintiffs argue that Dr. Wood's testimony does not address "how Children's Guild would implement" W.S.'s individualized behavior plan and that the email does not provide information about individualized behavior plans. Plaintiffs' Motion at 19-20. In combination, however, this evidence supports the conclusion that the behavioral system at The Children's Guild was "individually targeted" for students. AR at 611. Thus, even if a resolution of the concerns Plaintiffs raised in the due process complaint was required for a review of W.S.'s educational placement, the undersigned would find that, with the exception of W.S.'s level of aggressive

**Appendix A**

W.S., et al., v. District of Columbia

behaviors, the Hearing Officer reasonably concluded that The Children's Guild could implement these requirements.

### 3. The Hearing Officer Failed to Adequately Address The Children's Guild's Ability to Manage W.S.'s Aggressive Behaviors

Unlike other concerns Plaintiffs raised in their due process complaint, however, W.S.'s aggressive behaviors were a central part of W.S.'s IEP.  These behaviors were also a concern for which the Hearing Officer did not make any reasoned findings.  W.S.'s IEP team concluded that W.S.'s behaviors "not only disrupt [W.S.'s] ability to access instruction in the general education curriculum, but also create a barrier to [W.S.'s] ability to interact in play and develop and maintain healthy peer relationships." *Id.* at 721.  According to W.S.'s teacher assessments which were collected for the IEP, W.S. "almost always" engaged in aggressive and disruptive behavior like verbally or physically threatening other students.  *Id.* at 722.  W.S.'s goals therefore included engaging with others "without upset, anger, refusal, or making aggressive physical contact with demonstrated intent to do harm to others[.]"  *Id.* at 723.  Plaintiffs raised the issue of whether The Children's Guild could implement these goals in their due process complaint.  *See id.* at 611.

The Hearing Officer did not reach any conclusions regarding whether The Children's Guild could provide services or indeed, has ever provided services, to a student with aggressive behaviors like W.S.  *See id.* at 14-21.  Far from providing "reasoned and specific findings" resolving this critical issue, there are no findings at all.  *Reid*, 401 F.3d at 521 (citation omitted).  Read generously, the HOD contains two pieces of  evidence which *could* support such a conclusion, but given the contradictory and unreliable nature of some of this evidence, the Hearing Officer should have made "reasoned and specific findings" regarding how The

**Appendix A**

W.S., et al., v. District of Columbia

Children's Guild could have accommodated W.S.'s aggressive behaviors. *Reid*, 401 F.3d at 521 (citation omitted).

The first piece of evidence is a "brochure" which indicates that The Children's Guild "accepts students with anger issues, aggressiveness issues, withdrawal issues, and issues with suicidal thoughts or actions as well as a range of other students." AR at 12. This brochure, which appears to be a screenshot of an "Admissions" website associated with The Children's Guild, describes some programs which are separate from the school which W.S. was slated to attend. *Id.* at 390. The description of "mental health services" related to anger and aggressiveness appears in section of the brochure dedicated to "The Children's Guild Family Help Center." *Id.* at 392. The section for The Children's Guild Day School includes no such description. *Id.* at 392. Thus, to the extent the Hearing Officer relied on this brochure to find that The Children's Guild program that W.S. would attend "accepts students with anger issues [and] aggressiveness issues," the Hearing Officer was "wrong" to conclude that this brochure supported that conclusion. *Reid*, 401 F.3d at 521 (citation omitted).

The Hearing Officer did not discuss, but did reference, a second piece of evidence bearing on this question in broadly citing and approving of the testimony of Ms. Reda. AR at 20. In response to a question about whether The Children's Guild represented that it could provide services to students with aggressive behaviors, Ms. Reda stated that "it wasn't a yes or no answer" and that The Children's Guild said that they "were able to work with someone that had his level of aggression, and that they had worked with similar students in the past who had that level of aggression." *Id.* at 1394. Other witnesses, however, provided different accounts. Dr. Solomon, who was also present during the observation at The Children's Guild, stated categorically that she learned that "Children's Guild does not accept children with aggressive

**Appendix A**

W.S., et al., v. District of Columbia

behaviors." *Id.* at 1175.  Dr. Wood stated that The Children's Guild represented that it does "not take children with severe aggressive behaviors[,]" but that The Children's Guild could nonetheless accommodate W.S.  *Id.* at 1335.  Just as the Hearing Officer did for other issues, the Hearing Officer should have reconciled this contradictory record and reached a specific conclusion.  *See id.* at 17 (concluding, *inter alia*, that The Children's Guild uses a TEACCH methodology after reconciling evidence which supported and contradicted that conclusion).  On remand, the undersigned recommends that the Hearing Officer do the same for the issue of whether The Children's Guild could accommodate students with aggressive behaviors like W.S.

## IV.   CONCLUSION

For all of the foregoing reasons, it is, on this 17th day of August, 2020,

**RECOMMENDED** that Plaintiffs' Motion for Summary Judgment (ECF No. 10) be **GRANTED** and that this matter be remanded to the District of Columbia Office of State Superintendent for Education for further proceedings in accordance with the instant Report and Recommendation; and it is

**FURTHER RECOMMENDED** that Defendant's Cross Motion for Summary Judgment (ECF No. 11) be **DENIED**.



Deborah A.
Robinson
2020.08.17 15:44:54
-04'00'

DEBORAH A. ROBINSON
United States Magistrate Judge

**Within fourteen days, either party may file written objections to this report and recommendation.  The objections shall specifically identify the portions of the findings and recommendations to which objection is made and the basis of each such objection.  In the absence of timely objections, further review of issues addressed herein may be deemed waived.**